[993 NYS2d 627]

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v TOMAS ORDONEZ XIRUM, Defendant.

Supreme Court, Kings County, August 22, 2014

APPEARANCES OF COUNSEL

*The Legal Aid Society*, Brooklyn (*Emily Poppish* of counsel), for defendant.

*Katherine Ajayi*, East Elmhurst, for plaintiff.

### OPINION OF THE COURT

DINEEN A. RIVIEZZO, J.

Defendant Tomas Ordonez Xirum moves by order to show cause, filed August 18, 2014, for an order seeking defendant's release should the New York City Department of Corrections (DOC) fail to release him upon termination of the above docketed case.

## Facts

According to the criminal court papers, on July 10, 2014, defendant was arrested and charged with Penal Law § 170.20, criminal possession of a forged instrument in the third degree, among other charges, after he was observed by an officer driving a vehicle with what is alleged to be a photocopied, forged Pennsylvania 30-day temporary in-transit license plate. Defendant also could not provide his driver's license, insurance, or the vehicle's registration. Defendant's rap sheet indicates that defendant has no prior criminal convictions.

According to defendant's papers, at his arraignment on July 11, 2014, counsel was informed that defendant had an "INS hold" in that an immigration detainer pursuant to a Department of Homeland Security (DHS) form I-247 had been filed. Defendant's attorney requested that bail be set, although the court was prepared to release defendant on his own recognizance, because, according to defendant's papers, his release "would have immediately led to his detention by Department of Corrections pursuant to the immigration detainer" (aff in support ¶ 4).

A copy of the detainer is attached to the defendant's moving papers. Preprinted at the top of the form in bold print and capital letters, the detainer reads as follows: "**THE U.S. DEPARTMENT OF HOMELAND SECURITY (DHS) HAS TAKEN THE FOLLOWING ACTION RELATED TO THE PERSON IDENTIFIED ABOVE, CURRENTLY IN YOUR CUSTODY:** [typed-in thereafter is the defendant's New York State identification number]." (*See* DHS form I-247 annexed as exhibit to defendant's mem of law.) Immediately thereunder are

four choices indicated by four large preprinted check-boxes located to the furthest left-hand side of the page and each choice begins with a capitalized action verb. On the detainer form at issue, only the fourth and last large check-box is checked as follows: "☐ Obtained an order of deportation or removal from the United States for this person." (*Id.*) The bottom half of the form begins with a preprinted, bolded and capitalized statement: **"IT IS REQUESTED THAT YOU:"** (*id.*). That phrase is followed by six choices indicated by six preprinted check-boxes of the same size and location as the four check-boxes mentioned above. On the detainer form at issue, four of the six check-boxes were checked. The first two sentences of the first and top box checked read as follows:

> "☐ Maintain custody of the subject for a period ***NOT TO EXCEED 48 HOURS***, excluding Saturdays, Sundays, and holidays, beyond the time when the subject would have otherwise been released from your custody to allows DHS to take custody of the subject. This request derives from federal regulation 8 CFR. § 287.7" (*see id.*).

Defendant alleged in his papers that the detainer does not provide the DOC with legal authority to detain the defendant past the termination of defendant's criminal case because on a date in the future—namely Monday, August 25, 2014, when the case is next on in criminal court—defendant intends to plead guilty to disorderly conduct with a promised sentence of time served, effectively terminating the criminal matter. Defendant's papers, in essence, argue that defendant will be held unlawfully at some point in the future based upon an anticipation or expectation that the plea will still be offered by the People, accepted by the court, and entered into by the defendant, and thereafter, DOC will not release the defendant. (The court action sheet in the criminal court file notes that defendant has rejected the offer of a violation with five days' jail on three consecutive court dates from July 24 through Aug. 14.)

At the hearing, held on August 21, 2014, however, addressing the court's concern about ruling on the specific future contingencies advanced by defendant that have yet to come to fruition, defendant amended his arguments and now alleges that defendant is not presently lawfully being held by the DOC because: (1) the detainer does not provide legal authority for the DOC to hold the defendant presently; and (2) the threat of alleged illegal detention pursuant to the detainer forced defendant to

request bail he knew he could not make in essence to thwart the DOC's ability to release defendant to the custody of DHS before the termination of defendant's case.

Further, at the hearing, the DOC confirmed for the court the process by which detainers are issued at Riker's Island and explained that federal officers from Immigration and Customs Enforcement (ICE) have an office located on the premises. DOC further confirmed that prior to the issuance of the instant detainer ICE confirmed by fingerprint match shortly after his arrest on July 10 that defendant was the correct person upon whom the order of deportation or removal had been issued and that defendant was, in fact, subject to an order of deportation or removal. While not essential to the court's ruling herein, DOC was able to provide the court with specific information such that defendant entered the United States illegally on February 28, 2008 and was the subject of an expedited removal order on March 5, 2008.

## Conclusions of Law

Defendant argues, in essence, that defendant's detention by the DOC on the DHS detainer violates the Fourth Amendment of the United States Constitution and article I, § 12 of the New York State Constitution in that the detainer itself is not a warrant, not a court order and does not confer probable cause to detain defendant. Defendant relies upon two federal cases that have held that detainers issued pursuant to 8 CFR 287.7 do not impose mandatory obligations on state and local law enforcement agencies to detain *"suspected* aliens subject to removal,'' but are simply "requests" (*Galarza v Szalczyk*, 745 F3d 634, 639-640 [3d Cir 2014] [emphasis added] [holding that interpretation of a detainer as an order from a federal agency to a state agency violates the anti-commandeering principle of Tenth Amendment]; *Miranda-Olivares v Clackamas County*, 2014 WL 1414305, 2014 US Dist LEXIS 50340 [D Ore, Apr. 11, 2014, No. 3:12-cv-02317-ST]).

Defendant alleges first, that on the face of the detainer, DHS is asserting only that it has determined that there is *"reason to believe"* that defendant is an alien subject to removal and such "reason to believe" is not equivalent to "probable cause." However, defendant misreads the form. The very first of the four preprinted larger check-boxes that states that DHS has "determined that there is reason to believe that the individual is an alien subject to removal" (herein referred to as the "rea-

son to believe" paragraph) was *not* checked on defendant's detainer form. By the plain language, positioning of the sentences, and size of the check-boxes, it is clear that the "reason to believe" paragraph is only qualified by the eight subcategories that follow it, each being listed, indented and underneath it, with eight smaller check-boxes. None of these eight subcategories were checked on defendant's detainer form.

Rather, read properly and in its entirety, DHS is asserting— starting with the large bold capitalized caption at the top of the detainer and referenced above—that DHS has, in fact, taken the action of obtaining an order of deportation or removal from the United States for the defendant. This is clearly very different.

Nevertheless, defendant's constitutional arguments also fail on their merits for the straightforward reason that an order of deportation or removal from the United States does, in fact, provide the DOC with lawful authority to detain defendant. None of the legal authority cited by defendant states otherwise and, in fact, the cases relied upon by defendant most heavily, *Miranda-Olivares v Clackamas County* (2014 WL 1414305, 2014 US Dist LEXIS 50340 [D Ore, Apr. 11, 2014, No. 3:12-cv-02317-ST]) and *Galarza v Szalczyk* (745 F3d 634, 639-640 [3d Cir 2014]) fully support this conclusion.

In *Miranda-Olivares*, defendant was arrested for violating a domestic violence restraining order and at her arraignment the court set $5,000 bail. Her attempts to post the bail were thwarted by the county jail that informed her that she would not be released even if bail was posted on account of the DHS detainer, filed pursuant to 8 CFR 287.7, and described in the District Court's opinion as follows:

> "[the detainer] state[d] that DHS 'has taken the following action related to' her with an 'X' marked in the first of four boxes indicating that DHS had 'initiated an investigation to determine whether [Miranda-Olivares] is subject to removal from the United States.' It states no basis for the investigation and was not accompanied by an arrest warrant or any other charging document." (*Miranda-Olivares v Clackamas County*, 2014 WL 1414305, *1, 2014 US Dist LEXIS 50340, *3 [D Ore, Apr. 11, 2014, No. 3:12-cv-02317-ST].)

Notably, the court then states in the next footnote that the box for "[o]btained an order of deportation or removal from the

United States for this person" was *not* checked (2014 WL 1414305, *1 n 2, 2014 US Dist LEXIS 50340, *4 n 2).

In addressing defendant's Fourth Amendment claim, the court stated that

> "Miranda-Olivares was not charged with a federal crime and was not subject to a warrant for arrest or order of removal or deportation by ICE. The County admits that Miranda-Olivares was held past the time she could have posted bail and after her state charges were resolved based exclusively on the ICE detainer. But the ICE detainer alone did not demonstrate probable cause to hold Miranda-Olivares. It stated only that an investigation 'has been initiated' to determine whether she was subject to removal from the United States. The ICE detainer's stated purpose of requesting the Jail to hold Miranda-Olivares custody was 'to provide adequate time for [ICE] to assume custody' of her. Therefore, it was not reasonable for the Jail to believe it had probable cause to detain Miranda-Olivares based on the box checked on the ICE detainer." (*Miranda-Olivares v Clackamas County*, 2014 WL 1414305, *11, 2014 US Dist LEXIS 50340, *32-33 [D Ore, Apr. 11, 2014, No. 3:12-cv-02317-ST] [citations omitted].)

Clearly then, the court recognized that under a Fourth Amendment analysis, a detainer stating only that an investigation had been initiated to determine *whether* a subject was subject to removal from the United States is clear and distinct from the probable cause that exists when a subject is charged with a federal crime, subject to a warrant for arrest or *an order of removal or deportation.**

The facts before the *Galarza* court were very similar to *Miranda-Olivares*, in that defendant Galarza did not, in fact have, nor did his detainer ever allege, that an order of removal

---

* In a different portion of the opinion dealing with defendant's section 1983 claims, the *Miranda-Olivares* court further distinguished the detainer in that case from an actual order of removal as a basis for detention. In footnote 4, the court states that "[h]ad ICE issued an order of removal or deportation for Miranda-Olivares, then a refusal by the County to comply could be constitutionally preempted." (2014 WL 1414305, *4 n 4, 2014 US Dist LEXIS 50340, *13 n 4.) The court acknowledged that had such an order of deportation existed, the doctrine of field-preemption, "based on the implied 'federal power to determine immigration policy,' " would have controlled and the County presumably would not have been able to exercise any discretion in its enforcement of the order. (*Id.*, citing *Arizona v United States*, 567 US —, —, 132 S Ct 2492, 2500 [2012].)

or deportation already existed. Rather, like in *Miranda-Olivares*, the detainer simply described Galarza as a "suspected alien" and that an "[i]nvestigation has been initiated to determine whether this person is subject to removal/deportation from the United States" (*Galarza v Szalczyk*, 745 F3d 634, 637 [3d Cir 2014]). The *Galarza* court never addressed the situation at bar, where DHS has definitively confirmed through a fingerprint match upon issuance of the detainer that the defendant has been ordered removed or deported.

Defendant's arguments that the detainer was incorrectly filled out and the Fourth Amendment requires that an actual copy of the order of removal or deportation be attached or provided to him in lieu of the detainer also fail. Similar to the fellow officer rule that permits detention by one police officer acting on probable cause provided by another, the DOC had the right to rely upon the very federal law enforcement agency charged under the law with "the identification, apprehension, and removal of illegal aliens from the United States." (*Arizona v United States*, 567 US —, —, 132 S Ct 2492, 2500 [2012].) The DOC works closely on Riker's Island with ICE which has verified through the defendant's fingerprints that defendant, in fact, is subject to an order of removal or deportation. (*See e.g. People v Gittens*, 211 AD2d 242 [2d Dept 1995].)

The Fourth Amendment requires that seizures be objectively reasonable in light of the facts and circumstances (*Miranda-Olivares*, 2014 WL 1414305, *11, 2014 US Dist LEXIS 50340, *32). Having held that an order of removal or deportation provides the DOC with probable cause to hold defendant for DHS, this court cannot say that under a Fourth Amendment analysis it is unreasonable for the DOC to further hold a defendant for *at most 48 hours* as requested in the detainer after the conclusion of the state case in order to give DHS an opportunity to seize the subject of the deportation order. To hold otherwise would be to encourage DHS to seize defendants out of city custody before the conclusion of their pending matters which is contrary to New York State's public policy and interest in ensuring that defendants' criminal cases are completed. Nothing in defendant's brief supports a different conclusion under either the New York State Constitution or a due process analysis.

Lastly, defendant's current bail situation is completely unlike the defendant in *Miranda-Olivares* where the court set bail and defendant's efforts to post it were unlawfully thwarted. Here,

the criminal court was prepared to release defendant on his own recognizance and, in fact, even noted as such on the court file. Defendant is held on bail solely at the request of his counsel based on a strategy decision on how to best position defendant to avoid deportation. Because defendant is subject to an order of deportation or removal, he is presently lawfully detained and has been since his arraignment and, thus, defendant's counsel's position that he was forced into asking for bail to avoid illegal detention also fails.

Finally, in resolving this writ the court does not address and need not rule on any additional arguments defendant has made either in his moving papers or during oral argument, including any argument concerning the constitutionality or applicability of the Administrative Code of the City of New York, title 9, chapter 1, § 9-131, "Persons not to be detained."

Thus, in sum, the order to show cause is denied for the following reasons:

1. The court finds that the instant detainer provides the DOC with probable cause to hold defendant for the period of time specified in the detainer, specifically, "**NOT TO EXCEED 48 HOURS**, excluding Saturdays, Sundays and holidays, beyond the time when the subject would have otherwise been released" from the DOC custody based upon the order of deportation or removal issued.

2. Presently, DOC has the authority to hold defendant because bail is set at $250/$250 and defendant has yet to post said bail.