*18-1103-cv*
*Hernandez v. United States*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2018

(Argued:  April 18, 2019        Decided:  September 17, 2019)

Docket No. 18-1103-cv

LUIS HERNANDEZ,

*Plaintiff-Appellant,*

*v.*

UNITED STATES OF AMERICA AND CITY OF NEW YORK,

*Defendants-Appellees.*[*]

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Before:

WESLEY and CHIN, *Circuit Judges*, and Kaplan, *District Judge*.[†]

---

[*]       The Clerk of the Court is directed to amend the caption to conform to the above.
[†]       Judge Lewis A. Kaplan, of the United States District Court for the Southern District of New York, sitting by designation.

Appeal from a judgment of the United States District Court for the Southern District of New York (Swain, *J.*) dismissing, pursuant to Federal Rule of Civil Procedure 12(b)(6), plaintiff-appellant's claims that he was wrongfully detained by local authorities pursuant to a federal immigration detainer. Plaintiff-appellant is a U.S. citizen who could not have been the subject of a removal order, and he contends that the United States and the City of New York violated his rights. The district court concluded that plaintiff-appellant failed to plausibly allege claims upon which relief could be granted.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

> JEFFREY A. ROTHMAN, Law Office of Jeffrey A. Rothman, New York, New York, *for Plaintiff-Appellant*.
>
> BRANDON D. WATERMAN, Assistant United States Attorney (Christopher Connolly, Assistant United States Attorney, *on the brief*), *for* Geoffrey S. Berman, United States Attorney for the Southern District of New York, New York, New York, *for Defendant-Appellee United States of America.*
>
> ERIC LEE, Assistant Corporation Counsel (Richard Dearing, Executive Assistant Corporation Counsel, *on the brief*), *for* Georgia M. Pestana, Acting Corporation Counsel of the City of New York, New York, New York, *for Defendant-Appellee City of New York.*

2

Omar C. Jadwat, Cody H. Wofsy, *and* Spencer E. Amdur, American Civil Liberties Union, San Francisco, California *and* New York, New York; Christopher Dunn, Antony Gemmell, Amy Belsher, New York Civil Liberties Union Foundation, New York, New York; Mark Fleming, National Immigrant Justice Center, Chicago, Illinois, *for Amici Curae The American Civil Liberties Union, New York Civil Liberties Union, and National Immigrant Justice Center*.

---

CHIN, *Circuit Judge*:

On September 27, 2013, plaintiff-appellant Luis Hernandez was arrested in Manhattan and charged with public lewdness, a misdemeanor. The same day, while he was being processed through the New York City Criminal Court system, the United States Department of Homeland Security ("DHS") lodged an immigration detainer against him, asserting that he was the subject of an order of removal. Hernandez, however, was born in Brooklyn, and as a U.S. citizen he could not have been the subject of a removal order. When DHS realized its error, it withdrew the detainer. In the meantime, Hernandez had been in custody for four days; he was not released until the detainer was withdrawn.

3

Hernandez brought this action below against defendants-appellants United States (the "Government") and the City of New York (the "City"), as well as certain individual federal officers, seeking damages for his wrongful detention.  Hernandez alleges that the Government was liable under the Federal Torts Claims Act (the "FTCA"), 28 U.S.C. § 1346 *et seq.*, for (1) false arrest and false imprisonment; (2) abuse of process; (3) violation of his due process rights under the New York Constitution; and (4) negligence.  Hernandez also alleges that the City was liable under 42 U.S.C. § 1983 pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  The Government and the City moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  The district court granted the Rule 12(b)(6) motions and denied Hernandez leave to file a further amended complaint.  Hernandez appeals.[1]

We AFFIRM in part, VACATE in part, and REMAND for further proceedings consistent with this opinion.

---

[1]     Hernandez also asserted constitutional claims against federal immigration officers, including DHS Officer W. Outlaw and unidentified DHS officers.  The district court dismissed these claims.  As Hernandez does not appeal the dismissal of these claims, they are not before us.

## STATEMENT OF THE CASE

### I.    *The Facts*

For purposes of this appeal, we take as true the facts set forth in the second amended complaint (the "Complaint").  *See Garcia v. Does*, 779 F.3d 84, 88 (2d Cir. 2015).

Hernandez is a U.S. citizen who was born in Brooklyn on July 28, 1974.  On Friday, September 27, 2013, he was arrested and charged with public lewdness, a misdemeanor.  The same day, as he was being processed through the New York City Criminal Court system, DHS Officer Outlaw lodged an "Immigration Detainer - Notice of Action" with the City against Hernandez.  J. App'x at 12. [2]  The detainer identified the "alien" as "Hernandez-Martinez, Luis Enrique," with a date of birth of July 28, 1974, and with a nationality of "Honduras." *Id.* at 32; *see id.* at 30-31.  The detainer requested that the New York City Department of Corrections ("DOC") "[m]aintain custody of [Hernandez] for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays,

---

[2]    The record is not clear how Outlaw determined that Hernandez was in New York state custody and why he believed Hernandez was the subject of an order of removal.

beyond the time when [Hernandez] would have otherwise been released from [DOC] custody to allow DHS to take custody of [Hernandez]." J. App'x at 32.

At Hernandez's arraignment, the Assistant District Attorney (the "ADA") initially recommended three days of community service on a plea to the charge. The judge, however, responded: "You can't ask for community service. He has an [Immigration and Customs Enforcement ("ICE")] detainer." J. App'x at 13. The ADA then recommended five days of jail and, "[g]iven the ICE detainer, [the ADA] request[ed] that $1 bail be set." J. App'x at 13. Because of the detainer, "bail was set at the nominal amount of $1.00" so that Hernandez could accrue "time credit towards any eventual sentence he might . . . receiv[e]." J. App'x at 12.

While in custody, Hernandez told various DOC staff members, including a social worker, two corrections officers, and a doctor, that he was a U.S. citizen. Each staff member told Hernandez that he or she could not help him. On Tuesday, October 1, 2013, Outlaw issued a second "Immigration Detainer - Notice of Action," instructing DOC to cancel the September 27, 2013 detainer. The securing order indicated that Hernandez's bail was paid on October 1, 2013, after the detainer was lifted. Hernandez did not pay the bail

6

himself. The bail was "donated" by someone at DOC in accordance with customary practice; payment of the $1.00 bail permits a detainee in these circumstances to be released when there are no longer any detainers in place -- release is "automatic" upon payment of the nominal bail. *Id.* at 15-16. Hernandez was released from custody the same day.

## II. *Proceedings Below*

On August 3, 2016, Hernandez brought this action. On December 14, 2016, Hernandez filed the Complaint. Hernandez asserted claims against the Government under the FTCA for (1) false arrest and false imprisonment, (2) abuse of process, (3) violation of due process under the New York Constitution, and (4) negligence. Hernandez also asserted claims against the City under 42 U.S.C. § 1983 for maintaining a policy of acceding to federal immigration detainers (even when detention is not appropriate) and failing to train its employees on handling immigration detainers.

On February 20, 2017, the Government and the City moved to dismiss the Complaint for lack of standing pursuant to Rule 12(b)(1) and failure to state a claim pursuant to Rule 12(b)(6). On March 13, 2018, the district court issued an opinion and order dismissing the Complaint and denying leave to

amend.  The court held that Hernandez sufficiently alleged standing but dismissed all of Hernandez's causes of action against the Government for failure to state a claim upon which relief can be granted.  In addition, the district court dismissed Hernandez's claim against the City as too generalized and conclusory. Judgment was entered March 14, 2018.  This appeal followed.

## STANDARD OF REVIEW

We review a district court's grant of a motion to dismiss under Rule 12(b)(6) *de novo*.  *Bldg. Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 187 (2d Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "[W]e accept as true all factual allegations and draw from them all reasonable inferences; but we are not required to credit conclusory allegations or legal conclusions couched as factual allegations."  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (internal quotation marks omitted).  "Accordingly, 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'"  *Id.* (brackets omitted) (quoting *Iqbal*, 556 U.S. at 678).

8

## DISCUSSION

On appeal, Hernandez argues that the district court erred in dismissing his tort claims under the FTCA against the Government and his § 1983 claim against the City. We hold that the district court erred as to Hernandez's false arrest and false imprisonment claim against the Government and as to his official policy claim against the City but properly dismissed the remaining claims.

## I.  *Claims against the Government*

Under the FTCA, Congress "waived the sovereign immunity of the United States for certain torts committed by federal employees." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994); *see* 28 U.S.C. § 1346(b). "[T]o be actionable under [the FTCA], a claim must allege, *inter alia*, that the United States 'would be liable to the claimant' as 'a private person' 'in accordance with the law of the place where the act or omission occurred.'" *Id.* at 477 (quoting § 1346(b)). "[T]he source of substantive liability under the FTCA" is the "law of the State." *Id.* at 478. We therefore look to New York law.

Hernandez asserts claims under the FTCA against the Government for: (1) false arrest and imprisonment; (2) abuse of process; (3) violation of the

due process clause of the New York Constitution; and (4) negligence. We

address each claim in turn.

A.     *False Arrest and Imprisonment*

Under New York law, the elements of a false arrest and false

imprisonment claim are: "(1) the defendant intended to confine the plaintiff, (2)

the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to

the confinement and (4) the confinement was not otherwise privileged."

*McGowan v. United States*, 825 F.3d 118, 126 (2d Cir. 2016) (per curiam) (brackets

and internal quotation marks omitted); *see Smith v. Cty. of Nassau*, 34 N.Y.2d 18,

22 (1974) (listing same elements for false arrest as false imprisonment).[3] "For

purposes of the privilege element of a false arrest and imprisonment claim, an act

of confinement is privileged if it stems from a lawful arrest supported by

probable cause." *De Lourdes Torres v. Jones*, 26 N.Y.3d 742, 759 (2016); *accord*

*Marshall v. Sullivan*, 105 F.3d 47, 50 (2d Cir. 1996). Officers have probable cause

when "they have knowledge or reasonably trustworthy information of facts and

circumstances that are sufficient to warrant a person of reasonable caution in the

---

[3]     Although false arrest and false imprisonment are sometimes treated as different torts, the Complaint asserts them as one claim, the parties treat them as one claim, and the elements are substantially the same. *See Burgio v. Ince*, 913 N.Y.S.2d 864, 865 (4th Dep't 2010) (listing same elements for false arrest and false imprisonment).

10

belief that the person to be arrested has committed or is committing a crime." *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999) (internal quotation marks omitted).

At issue here are the first and fourth elements: whether Hernandez sufficiently pleaded that the Government intended to confine him and whether this confinement was not otherwise privileged.

**1.    *Intent***

The Complaint adequately alleges that the Government intended to confine Hernandez.  "To prove intent, a plaintiff must show that the defendant either: (a) confined or intended to confine the plaintiff or (b) affirmatively procured or instigated the plaintiffs' arrest." *King v. Crossland Sav. Bank*, 111 F.3d 251, 255 (2d Cir. 1997).  Here, the Government issued the detainer precisely because ICE wanted to continue Hernandez's confinement and intended for him to be detained, even if he were otherwise to be released.  *See* J. App'x at 32 (requesting that DOC "[m]aintain custody of [Hernandez] for a period not to exceed 48 hours," excluding Saturdays, Sundays, and holidays (emphasis removed)); *Morales v. Chadbourne*, 793 F.3d 208, 215-16 (1st Cir. 2015) ("[T]he sole purpose of a detainer is to request the continued detention of an alien so that ICE

officials may assume custody of that alien and investigate whether to initiate removal proceedings against her.").[4] The Complaint, moreover, plausibly alleges that the only reason Hernandez was not released at his arraignment was the issuance of the detainer. For example, the Complaint alleges that "[b]ecause of the wrongfully issued detainer, [Hernandez] was unable to be released from custody at his arraignment, which would have otherwise occurred." J. App'x at 12; *accord id.* ("Because of the wrongfully issued detainer, [Hernandez] was also ineligible at his arraignment for a plea bargain that would otherwise have been available to him.").

The Government argues that the City, and not the Government, confined Hernandez because of his lawful arrest, the imposition of bail, and his failure to tender the bail. Hernandez, however, alleged that the imposition of

---

[4]    *Morales* involved a U.S. citizen who was arrested on unrelated state criminal charges and then continued in custody because of an immigration detainer lodged against her. 793 F.3d at 212-13. The plaintiff brought claims under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), against the ICE agent who issued the detainer and his supervisors. Both the district court and the First Circuit permitted the plaintiff to proceed with her claims. *Id.* at 211, 223; *see also Galarza v. Szalczyk*, 745 F.3d 634, 636 (3d Cir. 2014) (involving a U.S. citizen arrested on unrelated state criminal charges but held after posting bail pursuant to an immigration detainer); *Vazquez-Mentado v. Buitron*, No. 5:12-CV-0797 LEK/ATB, 2013 WL 2318636, at *7 (N.D.N.Y. May 28, 2013) (finding that officers lacked probable cause to arrest plaintiff, a U.S. citizen who produced a New York State driver's license, where officers only had a detainer for an alien of a similar name and the same birthday as plaintiff).

bail and his failure to tender the bail were not the reasons the City kept him in custody. According to the Complaint, "[h]ad there not have been a detainer lodged against [Hernandez] at his arraignment, he would not have received the $1.00 bail, but instead would have been released on his own recognizance." J. App'x at 16. This is clear from the arraignment transcript, which is quoted in the Complaint. The ADA originally sought only three days of community service but had to recommend five days' jail because of the detainer. Then, "[g]iven the ICE detainer, [the ADA] request[ed] that $1 bail be set." J. App'x at 13.

Moreover, the Complaint alleges that bail was set at a "nominal amount" as part of a "routine practice" so that Hernandez could "receive time credit towards any eventual sentence he . . . might receive." J. App'x at 12. And once the detainer was canceled, it was "automatic" that a donation by a DOC employee would pay Hernandez's bail and he would be released. J. App'x at 15. Hence, the Complaint plausibly alleges that bail was imposed only because of the detainer and that, even if Hernandez had paid the bail, it is a reasonable inference that he would not have been released as long as the detainer was in place.

13

A law enforcement officer is "responsible for the natural consequences of his actions." *Malley v. Briggs*, 475 U.S. 335, 344 n.7 (1986) (quoting *Monroe v. Pape*, 365 U.S. 167, 187 (1961)). The natural consequences of Outlaw issuing the detainer was that Hernandez would be detained for up to 48 hours (or longer, given the intervening weekend). *See Morales*, 793 F.3d at 218 ("The natural consequences of [the ICE agent] issuing the detainer was that [the subject of the detainer] would be detained up to 48 hours."). The Government cannot escape responsibility by shifting the blame to the City for keeping Hernandez in custody.

**2.** *Privilege*

As the Government concedes, DHS must have probable cause to lodge an immigration detainer. *Id.* at 217. A detainer is distinct from the initial arrest, but it results in the detention -- or further detention -- of an individual. Consequently, as the individual is maintained in custody for a new purpose after he was otherwise eligible to be released, he is subjected to a new seizure that must be supported by probable cause. *Id.*; *see also Illinois v. Caballes*, 543 U.S. 405, 407-08 (2005); *Arizona v. United States*, 567 U.S. 387, 413 (2012) ("[D]elay[ing] the release of some detainees for no reason other than to verify their immigration

14

status . . . would raise constitutional concerns."). Moreover, because it is a constitutional right to be free from an unreasonable seizure, *see* U.S. Const. amend. IV, a reasonable officer must act diligently before lodging a detainer against an individual and depriving that individual of his or her freedom. *See Dunaway v. New York*, 442 U.S. 200, 214-15 (1979) ("Nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed 'arrests' or 'investigatory detentions.'" (quoting *Davis v. Mississippi*, 394 U.S. 721, 726-27 (1969)).

Here, the Complaint plausibly alleges that the Government lacked probable cause to lodge the detainer, and therefore Hernandez's confinement was not otherwise privileged. The Complaint alleges that the Government lacked probable cause because Hernandez was the wrong person: he was not of Honduran nationality, his middle name was not "Enrique," his last name was not "Hernandez-Martinez," his name therefore did not match the name on the detainer, and DHS failed to inquire into whether it was issuing a detainer for the right person. We agree that these allegations are sufficient to plausibly allege a lack of probable cause.

15

First, the detainer was issued for a person with a different name. In some circumstances, that fact alone is sufficient to vitiate probable case. *See, e.g.*, *Vazquez-Mentado*, 2013 WL 2318636, at *4 (finding no precedent that an officer in search of "John Doe, aged forty years and two months, immediately has probable cause to arrest John Dowe, also aged forty years and two months, after seeing (and without verifying) Dowe's accurate, state-issued identification"); *Montoya v. N.M. Dep't of Pub. Safety*, No. CV 09-1068 BB/RLP, 2011 WL 13286159, at *7 (D.N.M. Jan. 5, 2011) ("A jury could find that [a] . . . name discrepancy would have vitiated probable cause.").

Second, because the names did not match, further inquiry was required. Given the discrepancy in names, a reasonable officer would have inquired further into whether Hernandez was in fact the person DHS wanted to detain. Indeed, the applicable immigration statute provides that to issue a detainer, immigration officers must have "reason to believe" that an individual is present in the United States unlawfully. 8 U.S.C. § 1357(d)(1).

Third, the Complaint plausibly alleges that the Government failed to conduct even a rudimentary inquiry into Hernandez's citizenship or identity. Indeed, Hernandez has alleged that his citizenship was readily ascertainable, and

officers "may not disregard facts tending to dissipate probable cause." *United States v. Pabon*, 871 F.3d 164, 175 (2d Cir. 2017) (quoting *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988)).  For example, the Complaint alleges that the Government could have verified that Hernandez was a U.S. citizen if it had checked (1) its own records; (2) the DOC Inmate Lookup Service records, which listed Hernandez's nativity as New York; or (3) Hernandez's rap sheet from the New York Division of Criminal Justice Services.  *See Mitchell v. City of New York*, 841 F.3d 72, 78 (2d Cir. 2016) ("[T]he failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause." (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983)); *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (same); *Kerman v. City of New York*, 374 F.3d 93, 99 (2d Cir. 2004) ("The officer is not free to disregard plainly exculpatory evidence." (internal quotation marks omitted)).[5]  Therefore, Hernandez has sufficiently alleged that the Government lacked probable cause to issue the detainer.

---

[5]     Hernandez alleged on information and belief that his rap sheet included his citizenship.  Indeed, an Internet search reveals that a New York State Division of Criminal Justice Services rap sheet includes whether an individual is a U.S. citizen.  *See The New York State Criminal History Record*, N.Y. State Div. of Criminal Justice Services (May 30, 2019), www.criminaljustice.ny.gov/ojis/documents/Rap-Sheet-Guide.pdf.

The Government argues that the similarity in surnames alone is sufficient to establish probable cause because of the convention in Spanish-speaking cultures to shorten surnames composed of the father's and mother's surnames to the first of the two surnames. Gov't Br. at 4.

We reject the notion that the purported similarity between "Luis Hernandez" and "Luis Enrique Hernandez-Martinez" is enough, without more, to establish probable cause to deprive someone of his freedom. The Government's argument that it has probable cause based on the similar names "seems particularly rooted in the context of immigration enforcement and concerns about the interchangeability of foreign names." *Vazquez-Mentado v. Buitron*, No. 5:12-CV-0797 LEK/ATB, 2013 WL 2318636, at *5 n.7 (N.D.N.Y. May 28, 2013). While names of foreign immigrants may be less familiar to some in the United States and "distinctions may therefore be more difficult to spot than variations between certain European or Anglicized names (*e.g.*, John/Jon, Smith/Smyth, or Eric/Erik), a lack of cultural familiarity does not excuse disregarding easily confirmable differences." *Id.* (internal citation omitted). Indeed, "[t]o hold otherwise would suggest that a lower standard of proof/lower level of investigation might be necessary in the case of individuals with Latin or

otherwise non[-]Anglo names, raising a host of constitutional concerns." *Id.*; *cf. United States v. Brignoni-Ponce*, 422 U.S. 873, 886 (1975) ("Mexican descent . . . alone [does not] justify . . . a reasonable belief that [petitioners] were aliens."). "Allowing law enforcement officers to target people based solely on characteristics such as ethnicity or national origin is to 'condone ethnic harassment." *Zuniga-Perez v. Sessions*, 897 F.3d 114, 127 (2d Cir. 2018) (quoting *Maldonado v. Holder*, 763 F.3d 155, 172 (2d Cir. 2014) (Lynch, *J.*, dissenting).

Even assuming that a reasonable agent knew of the naming convention identified by the Government, the detainer still listed a middle name for Hernandez-Martinez (Enrique) whereas, there is nothing in the record to suggest that Hernandez had a middle name. Additionally, "Hernandez" is a common surname. In fact, according to amici, it is the eleventh most common surname in the United States and appears in at least 700 cases on Westlaw. *See* Amicus Br. at 2. While "[t]he concept of probable cause leaves room for mistakes," there is only room if the "mistakes . . . could have been made by a reasonable officer." *Anderson v. Creighton*, 483 U.S. 635, 661 (1987).

Accordingly, we conclude that no reasonable officer would have issued the detainer in the circumstances alleged here, without conducting an

inquiry. And the complaint alleges facts from which one could conclude that a reasonable inquiry would have revealed that Hernandez was a U.S. citizen who could not have been subject to an immigration detainer. *See BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986) (holding that an "officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest").

There was discussion at oral argument to the effect that the dates of birth were the same. We do not know that to be the case. The Complaint does not allege that Hernandez had the same date of birth as Luis Enrique Hernandez-Martinez. And while the detainer has Hernandez's date of birth on it, the record is unclear whether Outlaw used Hernandez's or Hernandez-Martinez's date of birth in filling out the detainer. A reasonable officer would not have issued the detainer without an additional data point, such as a verified description of the individual who was sought,[6] the social security number of the individual who

---

[6]     *See, e.g.*, *Hill v. California*, 401 U.S. 797, 803 (1971) (finding probable cause where police had targeted individual's "address and a verified description," individual was inside locked home of warrant target, and individual "fit the description of [the targeted individual] received from various sources"); *Bennett v. City of Yonkers*, 859 F. Supp. 92, 92 (S.D.N.Y. 1994) (finding probable cause where plaintiff's name (Lorie Bennett) differed from subject of arrest warrant (Larry Bennett), because plaintiff responded to "Larry" -- which was phonetically similar to "Lorie" -- and met description of subject of arrest warrant); *see also Martinez v. City of New York*, No. 06 CIV. 5671 (WHP), 2008 WL 2566565, at *3 (S.D.N.Y. June 27, 2008), *aff'd*, 340 F. App'x 700 (2d Cir. 2009) (summary order) (finding probable cause where officers "knew that an outstanding warrant

was sought,[7] or fingerprint verification.[8]  This would seem particularly true in the context of "the situation facing [Outlaw] at the time," *Hill*, 401 U.S. at 804, that is, additional verification was readily attainable because Hernandez was already in police custody.  *See Morales*, 793 F.3d at 218 ("Arguably, it would be easier to establish probable cause in the case of detainers, because immigration officers

---

existed for a man who lived in Manhattan with the same first name, last name, middle initial and date of birth as [the plaintiff]" and differences between the plaintiff and the "physical description contained in the [warrant] . . . were . . . too minor to preclude a finding of probable cause").

[7]      *See, e.g., Mendoza v. U.S. Immig. & Customs Enf't*, 849 F.3d 408, 417 (8th Cir. 2017) (finding probable cause to issue detainer where plaintiff's name (Ramon Mendoza-Gallegos) partially matched target's name (Ramon Mendoza-Gutierrez), birthdate perfectly matched target's birthday, and *social security number* matched target's but for one digit); *Morales v. Chadbourne*, 235 F. Supp. 3d 388, 398 (D.R.I. 2017) (finding lack of probable cause because, *inter alia*, "ICE directed its agents to check . . . individual's social security number if available" in the federal database because social security numbers are "unique for each individual and not name dependent" and agent failed to do so).

[8]      *See, e.g., Perez-Ramirez v. Norwood*, 322 F. Supp. 3d 1169, 1172 (D. Kan. 2018) (finding probable cause where detainer was "based upon the pendency of removal proceedings and upon a *biometric confirmation* through federal databases that showed he lacked a lawful immigration status" (emphasis added)); *People v. Xirum*, 993 N.Y.S.2d 627, 629 (Sup. Ct. 2014) (finding that DOC could detain defendant pursuant to detainer issued after "ICE confirmed by fingerprint match" that defendant was target of removal order).  Moreover, it is at least plausible that ICE had Hernandez-Martinez's fingerprints because a final order of removal existed as to Hernandez-Martinez.  *See* 8 U.S.C. § 1357(f) ("[T]he Commissioner shall provide for the fingerprinting and photographing of each alien 14 years of age or older against whom a [removal] proceeding is commenced . . . .  Such fingerprints and photographs shall be made available to Federal, State, and local law enforcement agencies, upon request."); 8 C.F.R. § 236.5 (same).

would have easier access to interview and obtain records from an individual

detained in criminal custody.").[9]

In a supplemental letter brief, the Government responded to the

failure-to-investigate argument by asserting that "in the absence of *clear evidence*

*to the contrary*, courts presume that [public officers] have properly discharged

their official duties," Gov't Letter Br. at 3 (quoting *United States v. Armstrong*, 517

U.S. 456, 464 (1996), and that "[t]he record here does not provide clear evidence

that government and City officials failed to act properly," Gov't Letter Br. at 3-4.

But we are on review of a motion to dismiss, and the standard is plausibility, not

"clear evidence."

Finally, the Government argues that "ICE had probable cause to

issue the detainer" because the detainer form "reflects ICE's determination that

Hernandez was subject to 'an order of deportation or removal from the United

States.'" Gov't Letter Br. at 2 (quoting J. App'x at 32). This is an entirely circular

argument, as it amounts to the contention that "we had probable cause to issue

the detainer because we said so." Moreover, the detainer did not show that ICE

---

[9] We acknowledge that if the two individuals in fact had the same date of birth, that would be a strong indication that they were the same person. But the point here is that it is not clear whether the two individuals had the same date of birth.

had determined that *Hernandez* was subject to an order of removal; it showed only that *Hernandez-Martinez* was subject to a removal order.

Accordingly, we conclude that the district court erred in dismissing Hernandez's false arrest and false imprisonment claims.

**B.** *Abuse of Process*

The district court dismissed Hernandez's abuse of process claim because Hernandez failed to "plead sufficient facts to support an inference that the Government had an improper purpose in casting [its] net so wide." J. App'x at 75 (internal quotation marks and brackets omitted). We agree.

To prove abuse of process, plaintiff must show that the defendant "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003). As to the third prong of this test, "to state a claim for abuse of process, a plaintiff must establish that the defendants had an improper purpose in instigating the action" and "that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Id.* at 77. "[A] malicious motive alone . . . does not give

23

rise to a cause of action for abuse of process."  *Id.* (internal quotation marks and brackets omitted).

Here, Hernandez fails to allege an improper purpose.  The Complaint contains two allegations regarding Outlaw's issuance of the detainer: (1) he did so because of the "mere possibility" that Hernandez was the target of the removal order, and (2) he "did not care . . . whether or not the wrong person was detained pursuant to the detainer."  J. App'x at 19.  These allegations speak to Outlaw's motive -- rather than to the purpose of his actions -- and are thus insufficient to state an abuse of process claim.  *See, e.g.*, *Savino*, 331 F.3d at 77 (allegations that defendants sought to retaliate against plaintiff insufficient to state abuse of process claim).  Accordingly, because Hernandez has failed to allege that Outlaw "attempted to achieve any other collateral purpose beyond [detaining a removable alien]," *Mitchell*, 841 F.3d at 80, the district court properly dismissed this claim.

C.    *Violation of the New York Constitution*

Hernandez contends that the Government violated his due process rights under the New York Constitution.  *See* N.Y. Const. art. 1, § 6.  The district

24

court dismissed this claim, holding that Hernandez could not bring such a claim under the FTCA as a matter of law. We agree.

The FTCA "has not waived [the Government's] sovereign immunity with respect to claims that its employees have committed constitutional torts" under the federal constitution. *Castro v. United States*, 34 F.3d 106, 110 (2d Cir. 1994). Hernandez has not put forth any reason to distinguish in this respect between a due process claim under the federal constitution and a due process claim under a state constitution. Indeed, "New York courts have interpreted the due-process guarantees of the New York Constitution and the United States Constitution to be coextensive -- or assumed that they are," *Oneida Indian Nation of N.Y. v. Madison Cty.*, 665 F.3d 408, 427 n.13 (2d Cir. 2011), and it does not make sense that Hernandez should be able to pursue a state due process claim when he cannot pursue a federal due process claim. In fact, several district courts in his circuit have held that plaintiffs cannot assert FTCA claims for violations of the New York Constitution. *See, e.g.*, *Evans v. Solomon*, No. 06-CV-3284 SLT LB, 2011 WL 609806, at *2 (E.D.N.Y. Feb. 15, 2011) (dismissing state constitutional tort claim brought under the FTCA against a federal officer); *Li v. Aponte*, No. 05 CIV. 6237 (NRB), 2008 WL 4308127, at *11 (S.D.N.Y. Sept. 16, 2008) (dismissing state

25

constitutional claim brought under FTCA because court was "not persuaded that the New York state courts would recognize an implied right of action under the New York constitution against a federal officer.").  We agree with this conclusion.

Even if state constitutional tort claims are cognizable under the FTCA, Hernandez has still failed to state such a claim.  Although the language of the New York Constitution is slightly different from the language of the federal constitution,[10] "[s]tate involvement in the objected to activity" is required for a due process claim under the New York Constitution.  *Sharrock v. Dell Buick-Cadillac, Inc.*, 45 N.Y.2d 152, 160 (1978).  Indeed, the New York Court of Appeals has recognized that "there can be no question that [the drafters] intended the State Constitution to govern the rights of citizens *with respect to their government* and not the rights of private individuals against private individuals."  *SHAD All. v. Smith Haven Mall*, 66 N.Y.2d 496, 503 (1985) (emphasis added) (discussing state action requirement in the context of the New York Constitution's free speech clause).

---

[10]     *Compare* U.S. Const. amend XIV ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law."), *with* N.Y. Const. art. I., § 6 ("No person shall be deprived of life, liberty or property without due process of law.").

Here, Hernandez argues that his due process rights were violated because Outlaw lodged a detainer against him. Outlaw, however, is only a federal actor -- not a state actor. As he was acting under the color of federal law and not state law, the claim for violation of the New York Constitution fails. *See Hightower v. United States*, 205 F. Supp. 2d 146, 154 n.4 (S.D.N.Y. 2002) ("New York State Constitution only permits suits against state actors acting under color of state law, and not against the federal government or federal employees acting under federal law."); *cf. Appolon v. United States*, No. 16-CV-2275 SJ/SMG, 2017 WL 3994925, at *15 (E.D.N.Y. Sept. 6, 2017) (analyzing claim under Georgia's similarly-worded due process clause and concluding that "[i]t is clear . . . that a claim for a due process violation is not cognizable under the FTCA); *id.* ("Georgia's Constitution . . . stat[es] that '[n]o person shall be deprived of life, liberty, or property except by due process of law.'" (quoting Ga. Const. art. 1, § 1, ¶ 1)).

Accordingly, we conclude that the district court properly dismissed Hernandez's due process claim under the New York Constitution.

**D.**     *Negligence*

Hernandez alleges that Government is liable for negligence under the FTCA because it "breached [its] duty to [Hernandez]," and its actions "were a direct and proximate cause" of Hernandez's injuries.  J. App'x at 22.  This claim also fails as a matter of law.

As Hernandez concedes, "under New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution."  *Watson v. United States*, 865 F.3d 123, 134 (2d Cir. 2017) (brackets omitted) (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)).  Hernandez attempts to circumvent *Watson* by arguing that we "erred" in this decision and that it should now be "rectified."  Appellant's Br. at 38.  We see no error in *Watson*, and are, in any event, bound by our precedent.  *See Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 405 (2d Cir. 2014).  Hernandez's claim, therefore, is foreclosed as a matter of law, and the district court properly dismissed this claim.

**II.    *Claims against the City***

Hernandez sued the City under 42 U.S.C. § 1983, seeking to hold it liable for the deprivation of his rights under the Fourth and Fourteenth Amendments pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), alleging that (1) the City has an official policy of blindly honoring federal immigration detainers, that is, of treating federal immigration detainers as "mandatory" and honoring them without "engaging in any inquiry," "even when put on explicit notice that the detainer was issued in error," J. App'x at 24; and (2) the City failed to train its officers on the proper handling of immigration detainers.

**A.    *Applicable Law***

Under § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law."  42 U.S.C. § 1983.  Municipalities are "not vicariously liable under § 1983 for their employees' actions."  *Connick v. Thompson*, 563 U.S. 51, 60 (2011).  A municipality, however, may be liable under

29

§ 1983 if the plaintiff's injury was caused by "action pursuant to official municipal policy." *Id.* at 60-61. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.* at 61.

In "limited circumstances," a municipality may also be held liable for its failure to train its employees. *Id.* To state a failure-to-train claim, a plaintiff must allege that "a municipality's failure to train its employees in a relevant respect . . . amount[ed] to deliberate indifference to the rights of persons with whom the untrained employees come into contact." *Id.* (internal quotation marks and brackets omitted). "Deliberate indifference is a stringent standard of fault." *Id.* (brackets omitted). A municipality is deliberately indifferent where it fails to act when it has "actual or constructive notice," generally from "[a] pattern of similar constitutional violations by untrained employees," that its training program is deficient." *Id.* A plaintiff, therefore, "must demonstrate that the municipal action was taken with deliberate indifference as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice." *Outlaw v. City of Hartford*, 884 F.3d 351, 373 (2d Cir. 2018) (internal quotations marks and alterations omitted).

30

In addition, "for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury." *City of Canton v. Harris*, 489 U.S. 378, 391 (1989).  We focus on the "adequacy of the training program in relation to the tasks the particular officers must perform" and "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id.* at 390-91. Allegations that the injury could have been avoided with "better or more training" are not sufficient. *Id.* at 391.  The question is whether "the injury [would] have been avoided had the employee been trained under a program that was not deficient in the identified respect." *Id.*

Finally, a municipality may only be liable "where its policies are the moving force behind the constitutional violation." *Connick*, 563 U.S. at 61 (internal quotation marks omitted).  Therefore, "the plaintiff must show a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Id.*

### B. *Application*

#### 1. *Official Policy*

The Complaint alleges that the City has an official policy of blindly honoring federal immigration detainers. The City argues that such a policy is not adequately alleged in the Complaint. We disagree. The Complaint alleges that the City's policy of acceding to federal immigration detainers was pursuant to the decisions of the City's lawmakers; namely, their passage of Local Law 22 of 2013. Moreover, the Complaint alleges that there was a practice of "treating federal immigration detainers as though they were mandatory," and honoring them without inquiry even when circumstances suggested inquiry was warranted. J. App'x at 23.[11]

At issue here then is whether this alleged policy caused Hernandez's detention. The City argues that it is not liable for Hernandez's detention because (1) his detention was due to his failure to post bail; and (2) the DOC could rely on the immigration detainer.

---

[11] We note that while federal regulations state that when DHS issues a detainer an "agency shall maintain custody of the alien," 8 C.F.R. § 287.7(d), courts have nevertheless interpreted this language to mean that the honoring of detainers "[is] not mandatory." *Galarza*, 745 F.3d at 642.

32

### a.    *Failure to post bail*

The City argues that it did not violate Hernandez's constitutional rights because Hernandez was detained for his failure to post bail. As discussed above, however, the Complaint adequately alleges that but for the detainer, Hernandez would not have been released, even if he had posted bail. *See, e.g.,* J. App'x at 15 ("The release from custody of an inmate with $1.00 in nominal bail is automatic in circumstances . . . where there are no longer any detainers in place . . . ."); *see also Mercado v. Dallas County*, 229 F. Supp. 3d 501, 518-19 (N.D. Tex. 2017), *abrogated on other grounds by City of El Cenizo v. Texas*, 890 F.3d 164 (5th Cir. 2018) (concluding that allegations of complaint plausibly alleged that "Dallas County had a widespread and widely known practice of refusing to release on bond pretrial detainees with immigration holds, that bond was set for each of the plaintiffs, and that, despite bond being set, each plaintiff was denied pretrial release on bond either because (i) he attempted to post bond and it was refused, or (ii) any attempt to post bond would have been futile due to Dallas County's widely known practice of refusing to release on bond pretrial detainees who were subject to immigration holds").

Accordingly, we conclude that the Complaint plausibly alleges that but for the detainer, Hernandez would have been released, and that the City confined him not for his failure to post bail but because of the detainer.

### b.       *Reliance on the immigration detainer*

The City also argues that, even if the City detained Hernandez only because of the detainer, the Complaint fails to state a viable *Monell* claim because "[m]unicipal law enforcement officers are permitted to detain a suspect at the request of federal immigration agents who have probable cause to believe that the suspect is removable." City Br. at 17. Moreover, the City argues that there was probable cause here because the detainer reflected the existence of an order of removal. We are not persuaded.

The Complaint adequately alleges that the City lacked probable cause to rely on the detainer. First, the Complaint alleges that the name on the detainer (Luis Enrique Hernandez-Martinez) did not match Hernandez's name (Luis Hernandez). As explained above, the name discrepancy alone is arguably enough to vitiate probable cause, and the Complaint plausibly alleges that a reasonable officer, whether a court officer, corrections officer, or other City official, would have conducted further inquiry before continuing to detain

34

Hernandez. *See Manganiello*, 612 F.3d at 161; *Vazquez-Mentado*, 2013 WL 2318636, at *4.

Second, the City could not blindly rely on the federal detainer in the circumstances here. The Complaint alleges that Hernandez told multiple DOC employees that he was a U.S. citizen, and the City could have easily verified his citizenship by checking (1) the DOC Inmate Lookup Service, which listed his nativity as "New York," or (2) his rap sheet, which apparently noted that he was a U.S. citizen. J. App'x at 17-18, 62; *see Pabon*, 871 F.3d at 175; *Kerman*, 374 F.3d at 99. While we do not hold that an officer is required to investigate every claim of innocence, the City had an independent obligation to verify Hernandez's citizenship in the circumstances here. Where there is a discrepancy in the names and an individual's citizenship can be verified with minimal effort, the City is not free to ignore a claim of innocence. *See Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999) ("An officer need not conduct a mini-trial before making an arrest, but probable cause does not exist when a minimal further investigation would have exonerated the suspect." (internal quotation marks and citations omitted)); *see also Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002) ("In light of the importance of [defendant's] liberty interest, the significant risk of deprivation of that interest

35

through the City's warrant procedures, and the minimum burden to the City of instituting readily available procedures for decreasing the risk of erroneous detention, the procedures afforded by the City to [defendant] failed to provide him due process under the Fourteenth Amendment.").

The City argues that "under the collective knowledge doctrine, a federal immigration officer's knowledge of probable cause 'may be imputed to local officials.'" City Br. at 19 (quoting *El Cenizo*, 890 F.3d at 187). It argues that Outlaw's knowledge should be imputed to the local officials. There can be no collective knowledge, however, if the initiating officer lacked probable cause -- *i.e.*, in that event no other officer can rely on the information of the initiating officer. *See, e.g., United States v. Hensley*, 469 U.S. 221, 232 (1985) ("If the flyer has been issued in the absence of a reasonable suspicion, then a stop in the objective reliance upon it violates the Fourth Amendment."); *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 568 (1971) (concluding that the Fourth Amendment was violated where local police conducted a search pursuant to a warrant obtained by the county sheriff who lacked probable cause).

The collective knowledge doctrine does not help the City because, as the Complaint plausibly alleges, Outlaw -- the officer who instigated

Hernandez's detention -- lacked probable cause to issue the detainer and he failed to conduct an inquiry when a reasonable officer in the circumstances would have inquired. *See, e.g., Manganiello*, 612 F.3d at 161; *Vazquez-Mentado*, 2013 WL 2318636, at *4.

Accordingly, as the Complaint plausibly alleges that the City refused to release Hernandez because of its policy, and that the City would have seen that Hernandez was not subject to an immigration detainer if it had checked, Hernandez plausibly alleges that City policy indeed caused the deprivation of his rights. *See Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (municipality may be liable for actions of its employees if "the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality" (citing *Monell*, 436 U.S. at 690-91)).

The City argues that "[m]unicipal law enforcement officers are permitted to detain a suspect at the request of federal immigration agents who have probable cause to believe that a suspect is removable." City Br. at 17. We have no quarrel with that proposition. But the City cites no authority for the proposition that it *must* detain someone in custody, without further inquiry into

37

the existence of probable cause, when circumstances suggest probable cause may be lacking and verification would require minimal effort.

## 2. *Failure to train*

The Complaint alleges that the City failed to train DOC staff (1) "on the procedures, practices, policies, laws, rules, and/or directives governing immigration holds"; (2) "to check the nativity of inmates as to whom purported immigration detainers are lodged"; and (3) "on the procedures, practices, policies, laws, rules, and/or directives governing the effect, if any, an immigration detainer has on an inmate and an inmate's detention more generally and/or said inmate's right to be released from detention." J. App'x at 25. The district court dismissed this claim because the Complaint failed to allege that these failures were endemic or that a pattern of similar constitutional violations existed. We conclude that Hernandez failed to sufficiently plead a failure-to-train claim, although on different grounds.

As noted above, to plead a failure-to-train claim, a plaintiff must allege that a municipality's failure to train its employees amounted to "deliberate indifference" to the rights of individuals with whom the untrained employees have come into contact. This "stringent standard of fault" is not met here, where

38

the Complaint alleges that the City's employees acted not with deliberate indifference, but because of a purported policy of complying with federal immigration detainers without question, even when circumstances exist to question the validity of the detainer. If there is a constitutional violation, it is because of the City's policy, not because of the City's failure to train its employees. The employers' "shortcomings," assuming there were shortcomings, resulted from factors other than a faulty training program. *City of Canton*, 489 U.S. at 391. Accordingly, the district court properly dismissed Hernandez's failure-to-train claim.

* * *

In defending this appeal, the Government and the City point fingers at each other. The Government argues that the City was responsible for Hernandez's confinement and the City argues that it continued to detain Hernandez only because it was complying with the Government's detainer. The Complaint, however, has plausibly alleged that both the Government and the City were at fault, for it plausibly alleges that both failed to make an inquiry when circumstances warranted an inquiry, and verification could have been obtained with minimal effort. As a consequence of those failings, Hernandez was

deprived of his freedom for four days. *See Brignoni-Ponce*, 422 U.S. at 878 ("The Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest."); *Dunaway*, 442 U.S. at 216 ("[D]etention for custodial interrogation -- regardless of its label -- intrudes so severely on interests protected by the Fourth Amendment as necessarily to trigger the traditional safeguards against illegal arrest.").

## *CONCLUSION*

For the reasons set forth above, the judgment of the district court is AFFIRMED IN PART and VACATED IN PART, and the case is REMANDED for further proceedings consistent with this opinion.