20-616

James Domen v. Vimeo, Inc.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2020

(Argued: December 10, 2020                    Decided: July 21, 2021)

Docket No. 20-616

_____

JAMES DOMEN, AN INDIVIDUAL, CHURCH UNITED, A
CALIFORNIA NOT-FOR-PROFIT CORPORATION,

*Plaintiffs-Appellants*,

v.                                                      20-616-cv

VIMEO, INC., A DELAWARE FOR-PROFIT CORPORATION,

*Defendant-Appellee.*

_____

Before: POOLER, WESLEY, and CARNEY, *Circuit Judges*.

Appeal from the judgment of the United States District Court for the Southern District of New York (Stewart D. Aaron, *M.J.*) dismissing plaintiffs' claims alleging discrimination based on sexual orientation and religion under federal and state law. Having vacated our previous opinion, dated March 11, 2021, we file this amended opinion in its place. James Domen and Church United allege that Vimeo, Inc., unlawfully discriminated against them by deleting Church United's account from its online video hosting platform. We agree with the district court that Section 230(c)(2) of the Communications Decency Act protects Vimeo, Inc., from this suit and that Appellants have failed to state a claim for relief. Therefore, we AFFIRM the judgment of the district court.

_____

NADA N. HIGUERA, Tyler & Bursch, LLP (Robert H. Tyler, *on the brief*), Murrieta, CA, *for Plaintiffs-Appellants*.

MICHAEL A. CHEAH, General Counsel, Vimeo, Inc., New York, NY, *for Defendant-Appellee*.

Jean-Paul Jassy, Kevin L. Vick, Elizabeth H. Baldridge, Jassy Vick Carolan LLP, Los Angeles, CA (*on the brief*), *for Defendant-Appellee*.

Samuel C. Leifer, Patrick J. Carome, Ari Holtzblatt,

Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA and Washington, DC, *for The Internet Association, amicus curiae in support of Defendant-Appellee.*

POOLER, *Circuit Judge*:

Plaintiffs-Appellants James Domen and Church United allege that Vimeo, Inc., discriminated against them on the basis of their religion and sexual orientation by deleting Church United's account from Vimeo's online video hosting platform. The district court granted Vimeo's motion to dismiss on the grounds that Section 230 of the Communications Decency Act ("CDA") protects Vimeo from this suit and that Appellants failed to state a claim. The district court concluded that Vimeo deleted Church United's account because of Church United's violation of Vimeo's published content policy barring the promotion of sexual orientation change efforts ("SOCE") on its platform. Vimeo's enforcement of this policy, in turn, fell within the confines of the publisher immunity provided by Section 230(c)(1) and the immunity to police content created by Section 230(c)(2). It also found that Appellants failed to state a claim on any of the counts listed in the amended complaint. We previously affirmed the judgment of the district court in an opinion dated March 11, 2021. Having vacated that decision, we issue this amended opinion in its place.

3

Section 230 figures prominently in the current discourse regarding the intersection of law and social media.[1] While lively debate on whether and how best to regulate interactive computer service platforms is ongoing, and experts, consumers, and businesses continue to propose a variety of solutions, Section 230 remains the governing statute. Its impact on this case is clear. Pursuant to Section 230(c)(2), Vimeo is protected against the civil rights claims articulated by Appellants' amended complaint. Appellants argue that Vimeo demonstrated bad faith by discriminating against them based on their religion and sexual orientation, which they term "former" homosexuality; deleting Church United's entire account, as opposed to only the videos at issue; and permitting other videos with titles referring to homosexuality to remain on the website. However, Appellants' conclusory allegations are insufficient to raise a plausible inference of bad faith sufficient to survive a motion to dismiss. Appellants have also failed to

---

[1] *See generally, e.g.*, Danielle Keats Citron & Benjamin Wittes, *The Internet Will Not Break: Denying Bad Samaritans § 230 Immunity*, 86 FORDHAM L. REV. 401 (2017); Benjamin Edelman & Abbey Stemler, *From the Digital to the Physical: Federal Limitations on Regulating Online Marketplaces*, 56 HARV. J. ON LEGIS. 141 (2019); Kate Klonick, *The New Governors: The People, Rules, and Processes Governing Online Speech*, 131 HARV. L. REV. 1598 (2018).

state a claim under either the New York Sexual Orientation Non-Discrimination Act or the California Unruh Act.[2] Therefore, we AFFIRM the judgment of the district court.

**BACKGROUND**

These facts are taken from plaintiffs' amended complaint and are assumed to be true for the purposes of this appeal.

James Domen is the president and founder of the non-profit organization Church United.[3] Domen alleges that he "was a homosexual" for three years but then, "because of his desire to pursue his faith in Christianity, he began to identify as a former homosexual." App'x at 47. Domen shares his story through Church United to connect with others in California who have had similar experiences. Church United was founded in 1994 and is a California non-profit religious corporation. It seeks to "equip pastors to positively impact the political and moral culture in their communities," and it has over 750 affiliated pastors. App'x at 47.

---

[2] We do not reach the district court's conclusions regarding Section 230(c)(1).
[3] Because Domen is the president and founder of Church United and his claims are co-extensive with those of Church United, we generally refer to Domen and Church United together as "Church United" or "Appellants."

The organization claims to "focus on the spiritual heritage of the United States" by attempting to connect with "nationally-known speakers, including elected officials . . . who vote to support a biblical worldview." App'x at 47.

Vimeo is a Delaware for-profit corporation headquartered in New York. Founded in 2004, it provides an online forum that allows users to upload, view, and comment on videos. Videos hosted on Vimeo include music videos, documentaries, live streams, and others.

Vimeo's Terms of Service expressly prohibit content supportive of SOCE. They proscribe content which "[c]ontains hateful, defamatory, or discriminatory content or incites hatred against any individual or group." *Domen v. Vimeo, Inc.*, 433 F. Supp. 3d 592, 599 (S.D.N.Y. 2020). They also incorporate Vimeo's Guidelines. *See id*. (quoting the Terms of Service: "[a]ll videos you submit must also comply with the Vimeo Guidelines, which are incorporated into this Agreement."). The Guidelines include a section entitled "How does Vimeo define hateful, harassing, defamatory, and discriminatory content?," which states that Vimeo will "generally remove" several categories of videos, including those that "promote Sexual Orientation Change Efforts (SOCE)." *Id*. To upload a video to Vimeo's platform, all users must accept Vimeo's Terms of Service agreement. *See*

*Capitol Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 84 (2d Cir. 2016) ("All Vimeo users must accept its Terms of Service."). Appellants agreed to the Terms of Services and Guidelines by creating an account and uploading videos to the website. *Domen v. Vimeo, Inc.*, No. 8:19-cv-01278-SVW-AFM, 2019 WL 4998782, at *2-3 (C.D. Cal. Sept. 4, 2019) (applying the Terms of Service agreement's forum selection clause to Appellants' claims).

In October 2016, Church United created a Vimeo account to upload videos promoting the organization, including "videos addressing sexual orientation as it relates to religion." App'x at 49. They allegedly uploaded 89 videos over the following two years. At some point, Church United upgraded to a professional account, which requires a monthly fee in exchange for access to more features and bandwidth.

On November 23, 2018, Vimeo e-mailed Domen, informing him that a moderator had marked the Church United account for review. The e-mail explained, "Vimeo does not allow videos that promote [SOCE]." App'x at 58. Vimeo instructed Church United to remove the videos and **warned that if Church United did not do so within 24 hours, Vimeo might remove the videos or the entire account**. It also instructed Church United to download the videos as soon

as possible to ensure that the organization could keep them in case Vimeo deleted the account. Church United claims that five of its videos were flagged as violating Vimeo's policies:

- Video One: a two-minute video where Domen explained "his life story, his preferred sexual orientation, the discrimination he faced, and his religion." App'x at 49.

- Video Two: a promotion video for "Freedom March Los Angeles," allegedly an event where "former homosexuals" gather. App'x at 50.

- Video Three: an NBC-produced documentary segment about SOCE. App'x at 50.

- Video Four: a press conference with "the founder of Desert Stream" relating to his religion and sexuality. App'x at 50.

- Video Five: an interview with a survivor of the attack on Pulse Nightclub in Florida in March 2018 and his background as a "former homosexual." App'x at 50.

Appellants state that the videos were part of an effort by Church United to challenge a California Assembly bill proposing to expand the state's ban on SOCE to talk therapy and pastoral counseling.

On December 6, 2018, Vimeo deleted Church United's account, explaining: "Vimeo does not allow videos that harass, incite hatred, or include discriminatory or defamatory speech." App'x at 60. Appellants allege that Vimeo's action constitutes "censorship," App'x at 52, insofar as it barred Domen from speaking

8

about his preferred sexual orientation and religious beliefs. They also allege that Vimeo allows similar videos to remain on its website with titles such as "Gay to Straight," "Homosexuality is NOT ALLOWED in the QURAN," "The Gay Dad," and "Happy Pride! LGBTQ Pride Month 2016." App'x at 51. Based on these allegations, Appellants claim that Vimeo violated the Unruh Act, a California law barring businesses from intentionally discriminating on the basis of, inter alia, sexual orientation and religion; New York's Sexual Orientation Non-Discrimination Act; and Article 1, Section 2 of the California Constitution, which "mandates viewpoint neutral regulation of speech in public and quasi-public fora." App'x at 54. Appellants do not challenge the Guidelines' prohibition on pro-SOCE content as facially discriminatory under the civil rights laws, focusing only on Vimeo's application of the Guidelines to Appellants' content and account.

The district court granted Vimeo's motion to dismiss pursuant to Federal Rule 12(b)(6). *See Domen*, 433 F. Supp. 3d at 607-08. In doing so, the court concluded that all of Appellants' claims were preempted by subsections (c)(1) and (c)(2) of Section 230 of the CDA.[4] The district court first concluded that Vimeo was

---

[4] Section 230(e)(3) expressly preempts state law causes of action in the event of an "inconsisten[cy]" between such actions and Section 230. 47 U.S.C. § 230(e)(3); *see*

9

acting as a "publisher" rather than a speaker, triggering protection from suit under subsection (c)(1). *Id.* at 601-03. The district court acknowledged that the Second Circuit had not ruled on precisely this situation—where the plaintiffs sought to hold the defendant liable for removing content as opposed to permitting content to exist on its platform—but used the reasoning of other courts to conclude that this did not change the outcome. *Id.* at 602. The district court also concluded subsection (c)(2) required dismissal. *Id.* at 604. It reasoned that the videos promoted SOCE, violating Vimeo's legitimate content policy against SOCE, and Appellants' allegations suggesting Vimeo acted in bad faith were too conclusory to "nudge their claims across the line from conceivable to plausible." *Id.* at 604 (alteration omitted). The district court further decided that because Section 230 preempts state statutory claims and the California state constitutional claim, the entire case was statutorily barred. *Id.* at 604-06.

Next, the district court concluded that, even if the CDA did not bar all of Appellants' claims, Appellants failed to state a claim. *Id.* at 606-07. As for the discrimination claims, there were no plausible allegations supporting the claim

---

*also Zeran v. Am. Online, Inc.*, 958 F. Supp. 1124, 1131 (E.D. Va. 1997), *aff'd*, 129 F.3d 327 (4th Cir. 1997).

that Vimeo intentionally discriminated against Appellants on the basis of their sexuality or religion, a necessary element of a claim under both state statutes. *Id.* at 606. The district court also concluded that Vimeo was not a state actor, so its actions did not implicate Appellants' free speech rights, requiring dismissal of the California constitutional claim. *Id.* at 606-07. Lastly, the district court denied leave to amend as futile. *Id.* at 607.

On appeal, Appellants argue that Section 230 of the CDA does not protect Vimeo's actions from suit and that they stated a claim under state statutory discrimination law. They do not make any arguments regarding their state constitutional free speech claim in their opening brief and have therefore waived the ability to challenge it in this appeal. *See Gross v. Rell*, 585 F.3d 72, 95 (2d Cir. 2009).

**DISCUSSION**

We review a district court's grant of a motion to dismiss de novo, *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019), and denials of leave to amend for abuse of discretion, *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). "To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face."

*Hernandez*, 939 F.3d at 198 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

**I. Section 230(c)(2) of the Communications Decency Act**

Congress enacted the CDA in the face of growing and widespread use of the internet. "[T]he primary purpose of the CDA was to protect children from sexually explicit internet content." *FTC v. LeadClick Media, LLC*, 838 F.3d 158, 173 (2d Cir. 2016) (footnote omitted). Section 230 is an amendment to the original law, enacted to "provide immunity for interactive computer services that make 'good faith' efforts to block and screen offensive content." *Id.* (citation, alteration, and some internal quotation marks omitted).  Changes in the use of internet platforms now far outpace a law enacted before the invention of the smartphone.

Section 230 has two relevant subsections. The first provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C § 230(c)(1). The second governs "[c]ivil liability" and states that no provider or user of an interactive computer service shall be held liable for:

> (A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be

12

obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or

   (B) any action taken to enable or make available to information content providers or others the technical means to restrict access to [the] material described . . . .

*Id.* § (c)(2). "In applying the statute, courts have broken it down into three component parts[.]" *LeadClick*, 838 F.3d at 173 (brackets and internal quotation marks omitted). The statute shields conduct if the defendant "(1) is a provider or user of an interactive computer service, (2) the claim is based on information provided by another information content provider and (3) the claim would treat the defendant as the publisher or speaker of that information." *Id.* (alterations and internal quotation marks omitted). A "publisher's traditional editorial functions" include "deciding whether to publish, withdraw, postpone or alter content." *Id.* at 174 (internal quotation marks omitted).

Appellants argue neither subsection of Section 230(c) applies. They contend that subsection (c)(1) is inapplicable because this lawsuit seeks to hold Vimeo liable for the enforcement of its own content policies, not for hosting user-generated content. They also argue that subsection (c)(2) is inapplicable because, in their view, Vimeo did not act in good faith. Vimeo argues that subsection

13

(c)(1)'s protection from suit applies because the action involves content that it did not create, i.e., Appellants' videos regarding SOCE, and that, in any event, its enforcement of its policy regarding SOCE qualifies for good faith protection from suit under subsection (c)(2). It further argues that any allegations of bad faith are too conclusory to support rejection of its defense under subsection (c)(2). Regardless of whether a separate analysis might lead to the conclusion that subsection (c)(1) covers Vimeo in the circumstances alleged, we affirm the district court's dismissal because subsection (c)(2) protects Vimeo from suit.

Subsection (c)(2) protects interactive computer service providers from liability for "any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected." 47 U.S.C § 230(c)(2). Notably, the provision explicitly provides protection from suit for restricting access to content that providers "*consider*[] . . . otherwise objectionable," even if the material would otherwise be constitutionally protected, granting some degree of subjective discretion to service providers who restrict the availability of content in good faith. *Id.* (emphasis added).  For our purposes, we need not define the

14

outer reaches of the phrase "otherwise objectionable," since we conclude that Vimeo's removal of Appellants' videos and account for posting pro-SOCE content in violation of the Terms of Service is well within the scope of Section 230(c)(2)'s protection from suit.

Vimeo determined that pro-SOCE material is "harassing"—one of the categories expressly enumerated in Section 230(c)(2). *See Domen*, 433 F. Supp. 3d at 599. The prohibition on pro-SOCE content is contained within a section of the Guidelines entitled "How does Vimeo define hateful, *harassing*, defamatory, and discriminatory content?" *See id.* (quoting Vimeo's Guidelines) (emphasis added). That Vimeo "considers" the removed content "harassing," and by implication "objectionable," as those terms are used in Section 230(c)(2), is clear on the face of the record. *See* 47 U.S.C § 230(c)(2).

Moreover, the statute does not require providers to use any particular form of restriction to avail themselves of its protections. Although Appellants object to Vimeo's deletion of Church United's entire account as opposed to deleting only those videos promoting SOCE, nothing in the statute or related case law suggests that this difference takes Vimeo's actions outside of the scope of subsection (c)(2)'s protection from suit. Indeed, Vimeo warned Church United that its entire account

15

could be removed if it ignored the warning. Church United received the warning and did not take the videos down or otherwise allay Vimeo's concerns. Vimeo was entitled to enforce its internal content policy regarding SOCE and delete Church United's account without incurring liability.

We also agree with the district court that Appellants' allegations that Vimeo acted in bad faith are too conclusory to survive a motion to dismiss under Rule 12(b)(6). Appellants' bases for arguing that Vimeo acted in bad faith are not commensurate with how courts interpret bad faith in this context, and their cited cases do not satisfy their position. In *Zango, Inc. v. Kaspersky Lab, Inc.*, the Ninth Circuit considered whether the defendant's software—a filter blocking potentially malicious software from users' computers—qualified for Section 230 protection from suit in the same manner as platforms like YouTube or Facebook. 568 F.3d 1169, 1173-78 (9th Cir. 2009). The Ninth Circuit held that it did. *Id.* at 1178. In *Enigma Software Group USA, LLC v. Malwarebytes, Inc.*, the Ninth Circuit limited the scope of *Zango*, clarifying that Section 230 "immunity . . . does not extend to anticompetitive conduct." 946 F.3d 1040, 1054 (9th Cir. 2019). There, the court reinstated the plaintiff's Lanham Act claim, which alleged that the defendant's firewall program improperly filtered out the plaintiff's rival firewall program,

16

even though the plaintiff's program posed no actual security threat to users' computers. *Id.* at 1047-48. The plaintiff alleged that the defendant made "false and misleading statements to deceive consumers into choosing [the defendant's] security software over [the plaintiff's]." *Id.* at 1048. Vimeo's deletion of Appellants' account was not anti-competitive or self-serving behavior done in the name of content regulation. Instead, it was a straightforward consequence of Vimeo's content policies, which Vimeo communicated to Church United prior to deleting its account. Indeed, the policy was communicated to Church United before it even joined the platform.

Appellants argue that bad faith is apparent from the fact that other videos relating to homosexuality exist on Vimeo's website. In support of this, Appellants point to titles of videos that allegedly remain on Vimeo's website: "Gay to Straight," "Homosexuality is NOT ALLOWED in the QURAN," "The Gay Dad," and "Happy Pride! LGBTQ Pride Month 2016." App'x at 51. However, the mere fact that Appellants' account was deleted while other videos and accounts discussing sexual orientation remained available does not imply bad faith.[5] One

[5] Notably, Church United nowhere alleges that Vimeo subjected it to any harassment, warnings, or other forms of restrictions during approximately two

purpose of Section 230 is to provide interactive computer services with protection from suit for removing "some—but not all—offensive material from their websites," as Vimeo has done here. *Bennett v. Google, LLC*, 882 F.3d 1163, 1166 (D.C. Cir. 2018). Given the massive amount of user-generated content available on interactive platforms, imperfect exercise of content-policing discretion does not, without more, suggest that enforcement of content policies was not done in good faith. *See Zeran v. Am. Online, Inc.*, 129 F.3d 327, 331 (4th Cir. 2017) (explaining that "[t]he amount of information communicated via interactive computer services is . . . staggering" and that Congress passed Section 230 expressly to "remove disincentives for the development and utilization of blocking and filtering technologies") (internal quotation marks omitted). Moreover, these comparators are insufficiently detailed in the amended complaint to support an inference of intentional discrimination, as discussed below.

---

years of posting videos about its religion and message. By Appellants' own account, Vimeo only took action after Church United ignored a warning about posting SOCE content in violation of the Guidelines. This further undermines Appellants' position that Vimeo was acting in bad faith or with discriminatory intent.

18

Ultimately, "Section 230(c)(2) protects from liability providers and users of interactive computer service who voluntarily make good faith efforts to restrict access to material they consider to be objectionable . . . ." *Green v. Am. Online (AOL)*, 318 F.3d 465, 472 (3d Cir. 2003). Here, Vimeo did just that: it removed Appellants' account for expressing pro-SOCE views which it in good faith considers objectionable. Appellants implicitly acknowledge that their content violated the Vimeo's Terms of Service. They nevertheless ignored Vimeo's notice of their violation, and, as a result, Vimeo deleted their account. By suing Vimeo, Appellants run headfirst into Section 230, which "allows computer service providers to establish standards of decency without risking liability for doing so." *Bennett*, 882 F.3d at 1168 (brackets and internal quotation marks omitted).

Our decision should not be read to confer immunity on providers acting in circumstances far afield from the facts of this case. Courts have rejected Section 230 defenses against claims for false advertising, deceptive trade practices, and tortious interference. *See, e.g.*, *E-Ventures Worldwide, LLC v. Google, Inc.*, 188 F. Supp. 3d 1265 (M.D. Fla. 2016); *Nat'l Numismatic Certification, LLC v. eBay, Inc.*, No. 6:08-cv-42-Orl-19GJK, 2008 WL 2704404 at *24 (M.D. Fla. July 8, 2008). Judges, commentators, and the executive branch alike have expressed concern about

19

Section 230's potential to protect companies engaging in anti-competitive conduct. *See, e.g., Zango*, 568 F.3d at 1178 (Fisher, J., concurring); Berin Szoka & Ashkhen Kazaryan, *Section 230: An Introduction for Antitrust & Consumer Protection Practitioners*, GLOB. ANTITRUST INST. REP. ON DIGIT. ECON. 29 (2020); U.S. DEP'T. OF JUST., DEPARTMENT OF JUSTICE'S REVIEW OF SECTION 230 OF THE COMMUNICATIONS DECENCY ACT OF 1996 (2020). Certain claims sounding in contract or tort may be beyond the reach of Section 230(c)(2)'s protection from suit. Our decision applies to the limited circumstances of this case and analogous claims.

**II. Failure to State a Claim**

Appellants also fail to state a claim on which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The district court found that plaintiffs failed to state a claim under both the New York Human Rights Law (incorporating the Sexual Orientation Non-Discrimination Act) and the California Unruh Act because they did not "plausibly allege[] that Vimeo's conduct was animated by discriminatory intent against Domen." *Domen*, 433 F. Supp. 3d at 606. In order to state a discrimination claim under either statute, a plaintiff must allege facts sufficient to create an inference of intentional discrimination on account of the plaintiff's membership in a protected class. *See Greater L.A. Agency on Deafness, Inc. v. Cable*

20

*News Network, Inc.*, 742 F.3d 414, 425 (9th Cir. 2014); *Smith v. City of New York*, 385 F. Supp. 3d 323, 332 (S.D.N.Y. 2019).

Appellants have not met that standard. Instead, they simply allege that their content was removed for espousing pro-SOCE views. *See* App'x at 51 (Amended Complaint) ("Vimeo restricted and censored Plaintiffs' videos because those videos were based on a viewpoint regarding sexual orientation and religion with which Vimeo disagrees."). They make no allegation suggesting that Vimeo removed their content for any reason other than this violation of the Terms of Service.

On appeal, Appellants argue that the amended complaint alleged discriminatory intent by identifying "similar videos about sexual orientation and religion posted by other users that were not deleted." Appellants' Br. At 25. An inference of discrimination may be shown through a comparison to similarly situated persons not sharing a plaintiff's protected characteristic who were treated preferentially. *See, e.g., Stucky v. Wal-Mart Stores, Inc.*, 2005 WL 2008493, No. 02-CV-6613 CJS(P), at *6 (W.D.N.Y. Aug. 22, 2005). However, the allegations about these "similar videos" in the amended complaint are vanishingly thin and lack the substance required to support an inference of discriminatory intent. *See*

Appellants' Br. at 25. The amended complaint merely alleges, on information and belief, that other videos containing references to LGBTQ sexual orientations and gender identities were permitted to remain on the site. *See* App'x at 51. That is not enough. Only one "similar video" identified by the Plaintiffs could plausibly be understood to promote SOCE, and it is identified only as "Gay to Straight," with no further explanation about its content, when it was uploaded, how long it remained on the site, or the characteristics of the user who uploaded it. *See* App'x at 51; Appellant's Br. at 25; *see also Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 408 (S.D.N.Y. 2014) (aside from allegations that comparators and plaintiff had the same hair color, the complaint "fail[ed] to describe who these people are, what their responsibilities were, how their workplace conduct compared to [plaintiff's], or how they were treated," and therefore failed to state a claim for discrimination); *Morris v. Yale Univ. Sch. of Med.*, 477 F. Supp. 2d 450, 460 n.2 (D. Conn. 2007) ("To be 'similarly situated,' the individuals with whom plaintiff attempts to compare himself must be similarly situated in all material respects." (citation and alterations omitted)).

Appellants' claims must be dismissed for the separate and independent reason that they fail to state a claim for religious or sexual orientation-based

discrimination.  Although the parties raised additional arguments, there is no need to reach them.

## CONCLUSION

We conclude that CDA Section 230(c)(2) protects Vimeo from this lawsuit, that Appellants have failed to state a claim for discrimination, and that the district court properly dismissed Appellants' claims. Accordingly, the judgment of the district court is **AFFIRMED**.

23