Word of God Fellowship, Inc. v Vimeo, Inc. (2022 NY Slip Op 01978)





Word of God Fellowship, Inc. v Vimeo, Inc.


2022 NY Slip Op 01978


Decided on March 22, 2022


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 22, 2022
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Barbara R. Kapnick
Ellen Gesmer Jeffrey K. Oing Anil C. Singh Saliann Scarpulla


Index No. 653735/20 Appeal No. 15460 Case No. 2021-00793 

[*1]Word of God Fellowship, Inc., Doing Dusiness as Daystar Television Network, Plaintiff-Appellant,
v
Vimeo, Inc., et al., Defendants-Respondents.



Plaintiff appeals from an order of the Supreme Court, New York County (Barry R. Ostrager, J.), entered on or about February 8, 2021, which granted the CPLR 3211 motion of defendants Vimeo, Inc., VHX Corporation, and Livestream, LLC to dismiss the complaint.




Day Pitney LLP, New York (Alfred W.J. Marks and Gregory R. Bruno of counsel) and Kelly Hart & Hallman LLP, Fort Worth, TX (Michael D. Anderson and Caleb B. Bulls, of the bar of the State of Texas, admitted pro hac vice of counsel), for appellant.
Vimeo, Inc., New York (Michael A. Cheah and Neel Chopra of counsel), and Cuti Hecker Wang LLP, New York (John R. Cuti and Alexander Goldenberg of counsel), for respondents.



SINGH, J. 


This appeal concerns whether a video-hosting service may be held liable for its decision to remove videos that it determines violate its terms of service. Defendant Vimeo, Inc. prohibits users from posting videos that make false or misleading claims about vaccine safety. It removed five videos, posted by a commercial user, because the videos claimed that childhood vaccination leads to autism. The user sued, claiming that Vimeo had breached the parties' contract. The motion court held that liability was precluded by section 230 of the Communications Decency Act. We agree. Section 230 prevents lawsuits against Internet service providers for their good-faith decisions to remove content that they consider objectionable. If service providers had to justify those decisions in court, or if plaintiffs could circumvent immunity through unsupported accusations of bad faith, section 230 would be a dead letter. This is as true for commercial users as for any other plaintiff. Therefore, we affirm dismissal of the complaint.
Facts Plaintiff Daystar Television Network states that it is "an evangelical Christian-based television network." It alleges that Vimeo "is a video hosting, sharing and services platform," and that defendant VHX Corporation is a wholly-owned subsidiary of Vimeo. Daystar streamed videos to its website and contracted with defendants to host those videos. Specifically, in October 2019, Daystar purchased a two-year subscription to defendants' enterprise service, which defendants called their OTT (over-the-top) service. This subscription enabled Daystar to upload up to 2000 hours of video, per year, to be hosted by Vimeo and VHX. Daystar would take full advantage of this capacity, uploading over 3000 videos with an average length of an hour. In September 2020, it even purchased additional bandwidth.
The terms of the October 2019 purchase order incorporated Vimeo's Enterprise Terms. The Enterprise Terms, in turn, incorporated the online terms applicable to the OTT subscription service. Both the Enterprise Terms and the incorporated online terms authorized Vimeo to remove videos that failed to comply with its Acceptable Use Policy. Among potential violations of this Policy was "any content" that "[m]akes false or misleading claims about vaccination safety."[FN1] Vimeo [*2]had publicly announced the introduction of these terms in a blog post on June 26, 2019.
Among the thousands of videos that Daystar uploaded to defendants' platform were six claiming a causal link between vaccines and childhood autism. On July 17, 2020, Vimeo wrote to Daystar that these videos violated Vimeo's Acceptable Use Policy. Daystar alleges that, on July 24, 2020, Vimeo removed five of the videos. Daystar does not allege that defendants terminated services to Daystar prior to expiration of the two-year subscription term, or that Vimeo took down any of Daystar's (several thousand) other videos.
Discussion Daystar filed suit in New York County alleging breach of contract and unjust enrichment. Supreme Court dismissed the complaint as barred by Vimeo's immunity under 47 USC § 230(c)(2), the Communications Decency Act. We find that Supreme Court correctly dismissed this lawsuit.
With specified exceptions, section 230(c)(2) prohibits holding an interactive computer service provider [FN2] liable for "any action voluntarily taken in good faith to restrict access to or availability of material that the provider . . . considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable" (47 USC § 230[c][2][A]). Courts have construed section 230 as authorizing broad immunity (see Shiamili v Real Estate Group of N.Y., Inc., 17 NY3d 281, 288 [2011] ["Both state and federal courts around the country have 'generally interpreted Section 230 immunity broadly'"], quoting Universal Communication Sys., Inc. v Lycos, Inc., 478 F3d 413, 418 [1st Cir 2007]; see also Jane Doe No. 1 v Backpage.com, LLC, 817 F3d 12, 18 [1st Cir 2016] [citing federal authority to show "near-universal agreement that section 230 should not be construed grudgingly"], cert denied — US &mdash, 137 S Ct 622 [2017]). When a complaint makes evident that this immunity applies, the court may dismiss that complaint (Ricci v Teamsters Union Local 456, 781 F3d 25, 28 [2d Cir 2015]; see e.g. National Assn. of the Deaf v Harvard Univ., 377 F Supp 3d 49,69 [D Mass 2019] [dismissing claims as to content for which "it is apparent that the CDA will shield [defendant] from liability"]).
Section 230(c)(2) Applies to this Suit
Daystar asserts that section 230(c)(2) does not apply to breach of contract claims. Its sole basis for this argument, however, is broad dictum in a decision that has since been withdrawn (see Domen v Vimeo, Inc., 6 F4th 245, 253 [2d Cir 2021]["Certain claims sounding in contract or tort may be beyond the reach of Section 230(c)(2)'s protection from suit"] [emphasis added], withdrawn 2021 WL 4399692, 2021 US App LEXIS 29214 [2d Cir Sept. 23, 2021 No. 20-616-cv], petition for cert filed No. 21-1142 [Feb. 14, 2022]). Moreover, even if there were an exception for contractual obligations to host specific content, such an exception would not apply when a contract unambiguously authorizes one party to remove the type of content at issue.
Neither is the [*3]statute limited to material explicitly associated with the service provider. Section 230 immunizes "any action . . . to restrict access to or availability of material" by "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server" (47 USC § 230[c][2], [f] [emphasis added]). This unambiguous statutory language extends to removal of all material that a provider hosts, including material that is displayed on another party's website.
The Videos Were "Otherwise Objectionable" Under Section 230
Daystar argues that section 230(c)(2) does not cover the removed videos, because "otherwise objectionable" material must resemble the other categories of material listed in section 230(c)(2). Given the differences between these categories, however, the broad final term need not have anything in common with the narrower — but varied — earlier terms (Enigma Software Group USA, LLC v Malwarebytes, Inc., 946 F3d 1040, 1051-1052 [9th Cir 2019] [holding that canon of ejusdem generisdoes not apply to section 230(c)(2), cert denied — US &mdash, 141 S Ct 13 [2020]; see People v Reilly, 255 App Div 109, 110-11 [4th Dept 1938] [declining to read characteristic of some, but not all, related provisions into "otherwise" term], affd 280 NY 509 [1939]; see also CSX Transp., Inc. v Alabama Dept. of Revenue, 562 US 277,295 [2011] ["A canon meaning literally 'of the same kind' has no application to provisions directed toward dissimilar subject matter"]).
In other words, content may be "otherwise objectionable" without being obscene, excessively violent, harassing, or anything similar (Enigma Software Group, 946 F3d at 1051 ["But we cannot . . . ignore the breadth of the term 'objectionable' by construing it to cover only material that is sexual or violent in nature"]; see Domen v Vimeo, Inc., 433 F Supp 3d 592, 603-604 [SD NY 2020] ["Domen I"] [finding immunity under section 230(c)(2) because Vimeo subjectively considered objectionable a video that was not violent, sexual, or harassing], affd on other grounds — Fed Appx &mdash, 2021 WL 4352312, 2021 US App LEXIS 28995 [2d Cir Sept. 24, 2021, No. 20-616-cv], petition for cert filed No. 21-1142 [Feb. 14, 2022]; see also Daniels v Alphabet Inc.,2021 WL 1222166, *12-13, 2021 US Dist LEXIS 64385, *35-37 [ND Cal Mar. 31, 2021, No. 20-cv-04687-VKD] [applying section 230(c)(2) immunity to removal of videos that purportedly violated service provider's policy against promoting medical misinformation]). Daystar's contrary decisions from California predate Enigma Software Group and, in any case, were not based on the material's content (see Song Fi Inc. v Google, Inc., 108 F Supp 3d 876, 882-884 [ND Cal 2015] [denying CDA immunity to removal of video with unobjectionable content where provider contended that inflated view count was objectionable]; Sherman v Yahoo! Inc., 997 F Supp 2d 1129, 1137-1138 [SD Cal 2014] [finding CDA inapplicable because defendant did not [*4]analyze material to identify objectionable content]). Although Daystar cites one unreported case that arguably supports its position (National Numismatic Certification, LLC v eBay, Inc.,2008 WL 2704404, 2008 US Dist LEXIS 109793 [MD Fla July 8, 2008, No. 6:08-cv-42-Orl-19 (GJK)]), we find it less persuasive than recent decisions reaching the opposite conclusion. Under section 230(c)(2), then, vaccine misinformation may be "otherwise objectionable" content that providers are entitled to remove.
Daystar alleges that its videos do not make "false or misleading" claims, as prohibited by Vimeo's Acceptable Use Policy. Accordingly, it argues that the videos were not "objectionable" and that Vimeo did not have the contractual right to remove those videos. This argument is unavailing, because whether content is objectionable is a subjective determination that is reserved to the service provider (Domen I, 433 F Supp 3d at 603-604, citing Zango, Inc. v Kaspersky Lab, Inc., 2007 WL 5189857, *4, 2007 US Dist LEXIS 97332, *11-12 [WD Wash Aug. 28, 2007, No. 07-CV-00807 (JCC)], affd 568 F3d 1169 [9th Cir 2009]). Section 230 bars "'lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content'" (Shiamili, 17 NY3d at 289, quoting Zeran v America Online, Inc.,129 F3d 327, 330 [4th Cir 1997], cert denied 524 US 937; see also Murawski v Pataki, 514 F Supp 2d 577, 591 [SD NY 2007] ["Deciding whether or not to remove content or deciding when to remove content falls squarely within [defendant's] exercise of a publisher's traditional role and is therefore subject to the CDA's broad immunity"]). If the CDA immunizes Vimeo's removal of false or misleading claims about vaccine safety, it also immunizes Vimeo's good faith decision that a claim is false or misleading (see e360 Insight, LLC v Comcast Corp., 546 F Supp 2d 605, 609 [ND Ill 2008] ["Under the law, a mistaken choice to block, if made in good faith, cannot be the basis for liability under federal or state law"]). Requiring service providers to bear the cost of proving their decisions correct, even at the summary judgment stage, would undermine the purpose of the CDA (see Nemet Chevrolet, Ltd. v Consumeraffairs.com, Inc., 591 F3d 250, 255 [4th Cir 2009] ["We thus aim to resolve the question of § 230 immunity at the earliest possible stage of the case because that immunity protects websites not only from 'ultimate liability,' but also from 'having to fight costly and protracted legal battles'"], quoting Fair Hous. Council of San Fernando Valley v Roommates.com, LLC, 521 F3d 1157, 1175 [9th Cir 2008]; e360 Insight, 546 F Supp 2d at 609 ["To force a provider . . . to litigate the question of whether what it blocked was or was not [objectionable material] would render § 230(c)(2) nearly meaningless"]).
Accepting as true the facts as alleged in the complaint, and according Daystar the benefit [*5]of every possible favorable inference (see Landon v Kroll Lab. Specialists, Inc., 22 NY3d 1, 5-6 [2013]), the face of the complaint shows that Vimeo's removal of material it considered to be "otherwise objectionable" and in violation of its Acceptable Use Policy is protected by the CDA.
Daystar Has Not Pleaded Bad Faith
Daystar argues that, even if the videos could be considered "otherwise objectionable," section 230 does not apply because defendants acted in bad faith. Daystar alleges that defendants solicited its business, that the objectionable videos were posted on Daystar's website at the time, and that defendants represented that Daystar was an ideal long term partner with content that was a good fit for their platform. At the time, Daystar hosted more than 3000 hours of content. Nevertheless, because these six videos were "not a secret," Daystar alleges that defendants "knew that Daystar's content included vaccine programming."
Even accepting Daystar's allegations as true, however, these facts do not support a finding of bad faith on the part of defendants. Daystar does not allege, for example, defendants indicated that the vaccination content specifically was a good fit or that the Acceptable Use Policy did not apply to Daystar. Nor does it allege that Vimeo's stated grounds to remove the videos were a pretext for some illicit reason (compare Enigma Software Group, 946 F3d at 1052 [holding that section 230(c)(2) does not apply to decisions that are driven by anticompetitive animus]; e-ventures Worldwide, LLC v Google, Inc., 2017 WL 2210029, *3, 2017 US Dist LEXIS 88650, *9-10 [MD Fla Feb. 8 2017, No. 2:14—civ—646 (PAM) (CM)] [finding bad faith properly pleaded when factual allegations indicated possible anti-competitive motive for removal of content]).
Neither does good faith require that the material be reviewed by an expert. Daystar alleges that the defendants removed the videos without consulting a medical professional. Daystar contends that this shows bad faith but cites no authority that service providers are required to seek expert advice before removing content. Indeed, such a requirement would increase the costs of removing content and would significantly interfere with a service provider's decisions as a publisher. Both consequences would be fundamentally at odds with the purpose of section 230(c)(2) (see Shiamili, 17 NY3d at 287 [stating that section 230 was enacted "'to keep government interference in the medium to a minimum'" and "'to encourage service providers to self-regulate the dissemination of offensive material over their services'"], quoting Zeran, 129 F3d at 330, 331).
Daystar has alleged only that Vimeo attempted to comply with its Acceptable Use Policy, which was set forth in the terms of service and which it had publicly announced before Daystar signed the purchase order at issue. Such actions do not amount to bad faith (see Domen I, 433 F Supp 3d at 603-604; Daniels,2021 WL 1222166, *12-13, 2021 US Dist LEXIS [*6]64385, *36-37). Daystar's remaining allegations of bad faith are "bare legal conclusions," which are not entitled to be presumed true (Kaisman v Hernandez, 61 AD3d 565, 566 [1st Dept 2009]; see Domen I, 433 F Supp 3d at 604 [dismissing cause of action under section 230(c)(2) because the plaintiff failed to allege facts supporting an inference of bad faith]; e360 Insight, 546 F Supp 2d at 609 [same]).
Conclusion Because section 230 applies, Daystar's claims for breach of contract and unjust enrichment should be dismissed, whether or not Daystar has stated a cause of action. Vimeo's right to remove the objectionable videos is determined entirely by the terms of the agreement between Daystar and Vimeo. Because a contract governs this dispute, Daystar cannot maintain a cause of action for unjust enrichment (see Corsello v Verizon N.Y., Inc., 18 NY3d 777, 790-791 [2012]; Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 70 NY2d 382, 388-389 [1987]).
After due consideration, we reject Daystar's remaining arguments.
Accordingly, the order of the Supreme Court, New York County (Barry R. Ostrager, J.), entered on or about February 8, 2021, which granted the CPLR 3211 motion of defendants Vimeo, Inc., VHX Corporation, and Livestream, LLC to dismiss
the complaint, should be affirmed, with costs.
Order, Supreme Court, New York County (Barry R. Ostrager, J.), entered on or about February 8, 2021, affirmed, with costs.
Opinion by Singh, J. All concur
Kapnick, J.P., Gesmer, Oing, Singh, Scarpulla, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 22, 2022



Footnotes

Footnote 1: Daystar argues that this Policy does not apply to its agreement with defendants, because defendants did not provide the online terms for the OTT subscription service. Daystar failed to raise this argument prior to oral argument below. Moreover, defendants have provided sufficient evidence that those terms gave Vimeo the right to remove false or misleading claims on vaccine safety, and Daystar has not rebutted this showing with documentary evidence.

Footnote 2: The parties do not dispute that Vimeo is the provider of an "interactive computer service" (see 47 USC § 230[f][2]).